v. It please the court. The district court erred in applying the Evans cooling doctrine to invalidate the 050 patent on summary judgment based on an initial accusation of the G-Port product in Allied's complaint. Within five weeks of filing that complaint, through the district court's local patent rules, Allied had provided and served competitive carbide with its detailed infringement contentions and at that point had withdrawn any allegation of infringement by the G-Port product. But wasn't that still in the case? The district court, within its discretion, declined to amend the complaint. The district court, the amendment came much, much later. The issue with the amendment. So it's still in the case. The district court, well, as far as jumping to the amendment issue, I mean, the district court, it's our position, abused its discretion in not allowing us to amend. And we had moved to amend much later in the case when we had the 616 patent issue and come in. We timely moved to amend to bring it in and at that point we did amend the complaint also to remove the allegation against the G-Port. The district court. But that's nine months after filing and six months after summary judgment, right? After it was filed. That is the correct timing, approximately, I have it memorized, but yes. But we didn't think that... It seems it suggests that you just look like you've got a tough argument so you're trying to cut that out of your case. But that's not true. We had cut that out long ago. We served our infringement contentions and didn't accuse the G-Port of infringement at all. And then, under the local patent rules and the local rules, both parties jointly filed a Rule 26-F scheduling report and in that, under the local patent rules, we were required to identify the accused products and the claims at issue. Well, is that initial complaint still on admission just as a legal matter? I mean, I don't... Is it still bound by what's in there? I don't see why. The local rules are set up... If you hadn't investigated it, we'd come after you very quickly with a Rule 11 sanction of some kind, wouldn't we? So it seems to carry some legal weight. Even if you want to distance yourself from it now, which it took you some time to do, isn't it still an admission on which the court can rely? I don't think so. I think that we clearly told the court that that was not our position. And even if it was, we should have been allowed to amend. I mean, the court, the district court, we did move to amend later, not because of that issue to bring in a different patent. But nevertheless, the district court ruled on summary judgment and essentially ignored the motion for leave to amend. Mr. Gumm, you've probably done a very careful study of our case law. How many cases did you find where we overruled a trial judge on a motion to amend? I did not find... I can't think of any. It's an uphill battle, isn't it? It is an uphill battle, but even here, we did move to amend. And then when that didn't happen, when it was ignored, we went back with reconsideration and we said, Your Honor, we'd like you to reconsider it, because it did look like it was ignored. And what the court came back and said, well, there is a liberal policy of amending the pleadings under Rule 15, but here's a couple of reasons why we don't have to, and one is undue prejudice to the defendant. And the court said, relied principally on that. But I don't see how the defendant was prejudiced by that. They knew within five weeks of the case that we were no longer asserting infringement against the G-Court. They joined in the joint 26-F report. That's pretty serious prejudice. I was thinking of them. The moral of this case is be careful what you accuse of infringement, particularly when it was on sale more than a year before the critical date. So I mean, that makes a difference between whether a defendant wins or loses. That sounds like prejudice to me. Except that winning or losing is not the ultimate prejudice here. I mean, notice should be the issue here. It's not as if that all of the sudden, late in that stage, when we first moved to amend it, that was the only notice that the defendant had that we weren't asserting infringement against the G-Court. They knew all along. In fact, even in their motion for summary judgment, they say it. They quote, they say only the second product, the helmet head, did issue. That amendment was kind of misleading, wasn't it? I mean, in your amendment, you highlighted that you wanted to add a patent when in fact you were just trying to escape that G-Court, right? No, it wasn't. We weren't trying to escape the G-Court. I mean, at the time we made that amendment. You should have been trying to escape it. Again, Your Honor, we told the defense. We told the court, everyone. Even on summary judgment, they told the court. We told the court. There's no accusation of infringement against the G-Court anymore. Under the local patent rules, everybody had stipulated that only the helmet head was at issue. Anymore, but. It initially was. Yeah. Is it enough? I think. You admitted at the outset that you considered the G-Court to infringe. That later turns out to be an anticipating reference. Is it enough that you admitted at once? I don't think so. And there's at least one case I was able to. How often do we allow parties to change course on an admission like that? Do you have many cases of us doing that either? I don't. I don't have many cases where that hasn't been allowed. Again, this sort of folds back into two areas. One, whether or not we should have been able to amend later. I do want to go back, because there was nothing secretive or misleading about our amendment. We didn't make that amendment to remove the G-Court. We made the amendment to bring in the 616. We didn't think it was necessary. Again, we told the other side. The other side agreed. We told the court. Everybody knew that we were not accusing the G-Court of infringement. And even on summary judgment, Carbide never argued the Evans cooling doctrine. I mean, there was no. We weren't trying to run from that. It wasn't an issue in our minds. It wasn't an issue in their minds. And it came out of, kind of hit us out of nowhere when the district court relied on it. Mr. Gown, is it all right if we take you, is it all right with the panel, can we talk a bit about the technicalities of when a complaint has to be amended is something that, of course, we have in mind. But that's not your only issue on the field, I assume. No, it's not. The other issue under the Evans cooling doctrine, not only to even get into that, there had to be an accusation against what turned out to be the prior art. But in addition to that, the infringement allegation against the prior has to be the sole basis for the complaint. And the defendant has to concede infringement by the accused product. There was no concession of infringement either. I mean, the district court, I think, points to one statement in Carbide's motion for summary judgment where it says, quote, the defendant has stated that it does not infringe. But even if it does, the defendant asserts, et cetera, that the art invalidates it. Well, first of all, it's not a concession to say there's no infringement, but even if it does. But on top of that, this is a very ambiguous statement that the court's relying on. All it says is the defendant stated that it does not infringe. Well, what does that mean? There were two different products. Well, in the original complaints, there were two different products, the helmet head. And this statement's not clear at all. It doesn't reference the Gport product. It just says, well, even if it does, the products are prior art, which, of course, wasn't true. The helmet head wasn't prior art. So I think under the evidence cooling doctrine, there was no concession of infringement by Carbide taking it out of play there. Mr. Gumm, I have to give you credit for inventing a new doctrine. Never heard of the evidence cooling doctrine, new doctrine. It's a case. It's a precedent. Have I elevated it? I don't mean to. Memorable. I'm not sure I feel good about that now. But here, do we have before us the difference between the claims and the Gport tool? Are the details of the infringement issue before us? No. No. They're not, because the court, the district court, found there were genuine issues of material fact and denied Carbide's motion for summary judgment of anticipation. We have the issues of the amendment and the precedent of evidence cooling. Correct. And that leads to the other issue that I've raised in the briefing, is the inconsistency of the court's rulings. The district court first ruled that there were genuine issues of material fact, and it could not find that the asserted claims were anticipated by the Gport. But then it went on and said, well, under evidence cooling, I find that essentially there is anticipation. Because the on-sale bar at the heart is still that the invention was on sale, which leads back to anticipation. So we've got conflicting rulings. The court has said, on the one hand, there's no anticipation, and on the other, there is. When the burden of proof is clear and convincing, and we're on summary judgment, I think it's very difficult to affirm and sustain those conflicting rulings. The court's already said there is no anticipation. I do want to point to there is at least one case that we mentioned in our reply. It's quantum loyalty systems. And that is similar to our case, where the complaint, the pleadings, swept broadly and accused a number of products of infringement. And later on, the court, through some limited discovery and some other orders, the plaintiff then limited and specifically excluded what was an earlier product, what would have been prior art, from the accusations. And there, the court, and it was a magistrate's report and recommendation, but there, the court said, we have a situation where the allegation of infringement was withdrawn. It takes it out of application of Evans Cooling and Vanmore. Back to the normal situation, where a defendant is alleging that one of its products is prior art, and then has to go forward and establish anticipation, which in this case, the district court already found that it could not grant unsummary judgment. So there is some precedent. Would you like to save your rebuttal time? I would. Thank you. Mr. McIntyre? Morning, Your Honors. What's fundamentally wrong with this case is that the plaintiff apparently let the dog eat their homework. And they've omitted a lot of things from their brief that are pretty critical. The first is, there's a lawsuit pending now, where they're accusing the helmet head of violating the 616, which is progressing. So there's no need to amend the complaint to bring the 616 back in. There's a lawsuit pending, and it's being defended on the grounds of inequitable conduct and prior art. So that part of the amendment is just simply nonsense. You also have to look at the timing of the amendment. And the court very, very clearly pointed out, they waited until the very last minute. They completely went to school on the summary judgment. And at the very last minute, they're playing this cat and mouse game. Is the PTO going to issue the 616, or is the court going to rule? Well, they lost. The court ruled before they could amend their complaint, notwithstanding the fact the 616 had been issued for two months. And they didn't amend. So after they lose the summary judgment, they want to amend. Now, how do we get to there? In this case, there's been a lot of comment about the planning report, the initial infringement contentions, and the local patent rules. Well, the fact of the matter is, this case was filed in April of 10. Within 25 or 30 days, the initial planning report was filed. And as in most of these cases, it was absolutely bare bones. It said, the helmet head and similar tools. In that report, the on-sale bar date wasn't even raised, because at that time, it was unknown. So we're walking into the first pretrial, which was in June 6, with an absolute bare bones. Here we are. This is a patent case. We're going to go forward. They had filed their initial infringement contentions. And in them, they said, the helmet head and other similar tools. So we've got the complaint with the helmet head and the G-port, which are both hydraulic port drilling tools, accused. In the planning report, they said, the helmet head and similar tools. In the infringement contentions, they said, the helmet head and similar tools. And quite frankly, there's no darn distinction between the G-port and the helmet head, other than one minor point. And I speak from 14 years' experience in designing these things and building them. But that's a story for another day. Then, the judge comes to the pretrial. He sees the helmet head, the G-port, and their tools sitting on his desk. And he says, sure looks like an on-sale bar date case to me. He says, I'm going to suspend everything. No discovery, no further submissions. Defendant, open up your books. No hedging, no lawyer answers, no nothing. So Allied comes out to competitive carbide. The president of the company, the inventor, the lead counsel, who is also the lawyer who prosecuted the 050 and prosecuted the 616, they were given hard copy prints. They were given all the commercial information that showed when the helmet head and the G-port were first introduced to the public many years before. They also got to open up the computer files with their engineer and their lawyer looking over the right-hand shoulder of the engineer and me looking over the left hand while they went through the entire computer database of porting tools. And every drawing that they requested was given to them. Mr. McIntyre, the trial court said there were genuine issues and material facts on what? Anticipation? Anticipation. Yeah, and the court denied the anticipation defense. How does that relate to the on-sale bar? Very simple, because in Evans Cooling, if there's a concession or an admission of infringement for the purposes of applying the on-sale bar date, the court goes right to the on-sale bar date information. That's the key in Evans. The plaintiff is trying to get around it by saying you never conceded. I looked through a lot of case law, and I found no specific specification or requirement as to how the concession of infringement was supposed to be articulated. In fact, in their own briefing, they stated the defendant has conceded and admitted infringement twice in their summary judgment pleadings. Well, if they believe we conceded infringement and they put it in their papers, I think the court has a right to rely on that. So with the concession of infringement in place, the court went right to the prior act and the on-sale bar. And it's uncontroverted that the 094 patent, which was the very first patent in this series, was barred by the G Court. It's also uncontested that the helmet head was introduced to the public and actively marketed and sold before the 050 application was filed. Now, there's something very curious about this. Maybe you can help me. You're saying that all you have to do is concede that this product that I sold two years ago infringes your patent, and therefore the patent is invalid, and that's the end of it? No, it's alternative pleading, Your Honor. An infringement. Alternative or not, you're saying that that's the end of it. All you have to do is say, without proof of infringement or non-infringement, all you have to do is concede infringement more than a year before the filing date. And that invalidates the patent because of the concession. Because of the on-sale bar. That's correct, Your Honor. It's alternative pleading that was discussed extensively in evidence. You're saying there's no appropriate verification of the structure of the infringement of the actual activity, that because it's conceded, that ends it? According to evidence, Your Honor, that ends it. Because if the infringer, the alleged infringer, has two paths. They can say, OK, this product on its face infringes the 050 and its predecessor, the 094. But we were selling it 20 months before the provisional. Therefore, that patent is absolutely invalid. Is it your concession or their accusation? They accused. We admitted. And quite frankly, both the G-port and the helmet head tool would infringe. There's no question. They've got non-indexable replaceable inserts. They've got a first cutting tool. They've got three seats to hold the secondary inserts. They've got a shank that will fit in a multiple of machine tools that make these ports. That was the G-port. But the helmet head, as I understood it, it was not disputed that that was not sold before the filing date. The helmet head is an iteration of the G-port. It does exactly the same thing. Was that established by evidence? Or that was a concession? That's a concession, Your Honor. We looked at the patents, and we looked at the tools. Concession by both sides, or a concession by each? Concession by them. In fact, in their brief, and I'll try and find a reference here, in their brief, they stated that the defendant had conceded admission. The defendant has admitted infringement. So when they're telling the court that the defendant has admitted infringement, they can't come back later and say, well, we take that back. It didn't admit infringement. What Judge Newman is obviously getting at is it's a very clever ploy when accused of infringement to say, yes. And that nails them if that which infringes if later invalidates if earlier. So that's the point she's concerned about. And your answer to that apparently is, yes, but they accused us first. Exactly. And I think clever is too strong a word. In this case, it's a very, very obvious strategy. Because these tools are very different. If you put the three tools, their tool and our two tools, in a machine, put a block of aluminum, they'd all drill exactly the same port. The port's determined by the Society Automotive Engineer standards. So they all drill exactly the same port. So. But that wasn't litigated, was it? Pardon? That wasn't litigated, as I recall. No, that wasn't. That wasn't litigated. It was in the summary judgment fact pattern. But it's not a particularly litigated point. But going back to where I was, Judge Boyko said, we're going to look at the on-sale bar. We're going to look at it very carefully before we do anything else, before we get into the infringement contentions and the claims construction and the validity and invalidity and that whole panoply in the local patent rules, because it's so obvious on its face. So it goes to summary judgment. What was the genuine issue of material fact? What did it relate to? The degree of anticipation by the G port of the 094. And the court bypassed that, saying, because of the concession of infringement, I can look at the on-sale bar date. In other words, that overrides the genuine issue. Yes, sir. It does. Because it short circuits another year and a half of litigation. In other words, what you admit is no longer a genuine issue. It's no longer a genuine issue. The on-sale bar is absolute here. It's just as plain as can be. Now, did the court err in allowing them not to amend? Well, of course not. They waited until the very last minute. And their comment is, well, the 616 is a good patent. And the patent office allowed it. Well, that's sort of like saying your mother gave you a candy store. But what's interesting about that pleading is there's one material misrepresentation of fact. And that is that in the prosecution of the 616, that all the materials that were disclosed in the district court case were provided to the patent office. That is simply untrue. The August 2010 disclosure to the patent office and the prosecution of the 616 only contained a 2002, an eight-year-old competitive carbide brochure. It did not contain all of the drawings and all the other information that are in the papers before you. So the patent office had no clue that the helmet head and the G port even existed when they granted that patent. And that's going to be resolved in the next case. Now, unfortunately, the quotation about quantum is incorrect. In quantum, the court, to resolve a difference, ordered certain disclosures and ordered certain positions to be taken. That didn't happen here. The court was well satisfied with the path that this case was going, because the court was being practical and looking at the facts. You can't turn a decision back because you don't like what the judge did when he relied on the facts and he relied on the law. You mentioned a subsequent, another case. Yes, sir. In that case, is this patent which this court has invalidated, the trial court has invalidated, being asserted? It is not being asserted. The 616 is being asserted, and the 616 is claiming that the helmet head infringes because they're relating back to the 094, which was the original patent from 2002. Now, there's an interesting distinction in the 616 case, because if the court, for informational purposes, wants to read the file wrapper, the patent office said, without a terminal disclaimer, none of the claims in the 616 are patentable over the 050. They are not patentably distinct. They're thrown on the floor and mixed up like a jigsaw puzzle. And when they put it back together, it's a duck instead of a chicken. We'll wait until that one comes. We'll wait until that one comes. So here we are. They're saying the court erred in not letting them amend at the last minute and changed the whole case. New tool, new patent. Thank you, Mr. McIntyre. Thank you. Thank you. Judge Newman, I want to go back to the question you asked, Mr. McIntyre, about whether or not you still have to establish anticipation. Under Evans-Cooling, if the defendant triggers the on-sale bar with the accused product, it still bears the burden of proving that the accused product embodied the patent invention. And what Evans-Cooling says is that burden is met if the allegation of infringement by the accused product forms the sole basis of the complaint, and there's a concession of infringement. So while the carbide may have met its initial burden, that burden, there's no reason that it should not be rebuttable. And that is really where we ended up with when the district court, looking at the G-port, under 102, anticipation says, I can't find that it anticipates the claims that there are genuine issues of fact. But there's no dispute about the G-port is it, because as I gather, there was no dispute but that it was sold as of before the critical date, that it's only the other structure now that's at issue. That's correct. I mean, it ended up being that the G-port ended up being prior art. But that's just a typical case, as opposed to the Evans-Cooling atypical case, a typical case where there's a piece of prior art, and they're alleging it anticipates the claims. The district court, going through all that analysis and summary judgment that there are genuine issues of material fact, I'm going to deny that, something that a denial, even if there was a cross-appeal, which there wasn't, would be reviewed under an abuse of discretion. But that is really, although carbide could meet its initial burden under Evans-Cooling to show, essentially, anticipation, the district court, at the same time, went ahead and said, I can't find that it anticipates. Thank you, Mr. Cutler.